IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SARAH NOLT,  *Plaintiff*, | : <br> : <br> : |
| v. | :    CIVIL ACTION <br> :    NO. 23-0864 |
| CITY OF PHILADELPHIA, *et al.*,  *Defendants*. | : <br> : |

**MEMORANDUM OPINION**

**Scott, J.**                                                                                              **March 29, 2024**

       Plaintiff Sarah Nolt brings this action against the defendants for their alleged failure to protect her from being sexually abused as a child while she was in foster care. She asserts a claim under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment Constitutional rights against the City of Philadelphia ("the City"); Rosemary Perkins, a social worker employed by the City's Department of Human Services ("DHS"), and Children's Choice, the foster care organization that placed Ms. Nolt in her foster care home, alleging that they, as "state actors," violated the duty they owed her to protect her while she was in their custody, care and control. She also asserts a claim for negligence against Children's Choice, and Shalom Mennonite Church ("Shalom") and Maranatha Christian School ("Maranatha"), the places where Ms. Nolt alleges she was sexually abused.

       Children's Choice moves to dismiss Ms. Nolt's § 1983 claim against it on the basis that she has not alleged facts sufficient to plausibly show that it was a state actor. It also contends that the punitive damages claim is legally insufficient and should be dismissed. Maranatha also moves to dismiss the plaintiff's claim against it for punitive damages as legally insufficient. For the reasons discussed below, the Court will grant Children's Choice's motion to dismiss the § 1983 claim, but will give Ms. Nolt leave to amend her complaint to cure the deficiencies, and will grant

the motions of Maranatha and Children's Choice to dismiss the plaintiff's claim for punitive damages.

## BACKGROUND

According to the complaint, in 2001, when Ms. Nolt was four years old, the City removed her from her biological parents' home due to being neglected or abused, and placed her in Saint Vincent's, a group home for children removed from their homes. She alleges that while she lived at Saint Vincent's, she was raped three times by male staff members. *See* Complaint ("Compl.") (ECF No. 2) ¶¶ 9–13. She claims that DHS and the City had a duty to protect her while she was in a group home, but failed to meet that duty. Their failures included: "supervising the group home, visiting, interviewing and observing the plaintiff, interviewing Saint Vincent's staff to ensure that she was safe and that all of her needs were being met; ensuring that Saint Vincent's employees passed criminal background checks; and otherwise acting affirmatively to ensure that the plaintiff was safe." *Id.* ¶ 10–13.

A year later, when Ms. Nolt was five years old, the City moved her to the home of Florence Nolt in Lewisburg, Pennsylvania, which was a "pre-adoptive" foster home. *Id.* ¶ 14. Although it is not clear when Children's Choice first got involved in Ms. Nolt's care, or in what capacity, the plaintiff appears to allege that it was involved in her placement in Florence Nolt's home and in monitoring the placement. *See id.* ¶ 4 (stating that Children's Choice and its employees "were delegated authority from . . . the City to perform the duties of the City's Department of Human Services, including to certify and supervise foster homes in and outside of the City of Philadelphia."); ¶ 25 ("DHS/Ms. Perkins delegated their respective supervisory duties of Ms. [Florence] Nolt's foster home to Children's Choice and its [employees], . . . [who] had the same duties as Ms. Perkins to ensure that the plaintiff was safe in her foster home and her community.").

While living in Florence Nolt's home, the plaintiff met Jeffrey Groff, an adult relative of Florence Nolt's, who would visit the house. Florence Nolt frequently took the plaintiff to public events at Mr. Groff's church, Shalom Mennonite Church, as well as to events at the school that the plaintiff attended, Maranatha Christian School. Mr. Groff regularly attended the events at these two places. Florence Nolt would allow him to supervise the plaintiff alone at these events. Ms. Nolt alleges that while she was under Mr. Groff's supervision, he took her to isolated places in or behind the buildings on the premises of Shalom and Maranatha, where he raped and/or sexually molested her. These assaults took place multiple times when Ms. Nolt was between five and eleven years old. Compl. ¶¶ 18–20.

In 2008, when Ms. Nolt was eleven years old, she reported the rapes and sexual assaults by Mr. Groff to Ms. Perkins of DHS. Even though Mr. Groff remained in the community and Ms. Nolt felt fear and was re-traumatized when she saw him,[1] DHS did not take action to remove her from Florence Nolt's house. *Id.* ¶¶ 23–27.

The complaint alleges that the City "has a practice and/or custom of not properly supervising DHS and its employees, as well as not properly supervising its delegated agencies, including defendant Children's Choice, a Community Umbrella Agency (CUA)." *Id.* ¶ 30. Examples of this "practice" include

> (1) failing to properly train DHS social workers and CUA workers how to properly assess safety for children in foster care;
>
> (2) failing to ensure that children in foster care are being frequently visited to access safety;
>
> (3) failing to train social workers to investigate the medical history of children in foster care;

---

[1] Mr. Groff was eventually arrested, prosecuted and convicted for his assaults, but he was released back into community after serving a short sentence. Compl. ¶ 27.

> (4) failure to train social workers to properly observe children to determine signs of abuse;
>
> (5) failure to require and train social workers to remove children from caretakers - foster parents, in homes or environments where physical and/or sexual abuse has occurred;
>
> (6) failure to train social workers to obtain the names of all persons who will have access to children in foster care, and do criminal background checks on those people, as well as meet and interview them;
>
> (7) failure to train social workers to obtain medical information about children in foster care, including information from therapists or other mental health providers;
>
> (8) failure to train social workers to teach foster children about "stranger danger", and to discuss this with children, as well as to simply train social workers to simply ask children if they have been inappropriately and/or sexually touched, when they conduct safety visits.

*Id.* ¶¶ 30, 36.

The complaint further alleges that these custom/practices of the City "have been evidenced by notable deaths and sexual abuse of children in foster care in the past 18 years, for which DHS social workers have been convicted of crimes." *Id.* ¶ 31.

In Count I of the complaint, Ms. Nolt asserts that the City, Ms. Perkins and Children's Choice, all of whom were "state actors," violated her constitutional rights under the substantive due process clause of the Fourteenth Amendment,[2] entitling her to recovery under 42 U.S.C. § 1983. Compl. ¶¶ 32–36. She claims that they violated the duty they owed her "to protect her while she was in the custody, care and control of the City of Philadelphia and DHS, in foster care, including through . . . Children's Choice." *Id.* ¶ 33. As a result of their actions and inaction, Ms.

---

[2] The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

Nolt was repeatedly sexually and physically abused by Mr. Groff, for which she suffered severe and extreme emotional distress from the age of four until the present. *Id.* ¶¶ 34–35. She seeks compensatory damages and attorney's fees and costs, as well as punitive damages against all defendants other than the City.

In Count II, Ms. Nolt asserts a claim for negligence against Children's Choice, Shalom and Maranatha. She alleges that Children's Choice breached its duty to Ms. Nolt to protect her from harm in foster care, that "it was foreseeable that a child in foster care would be sexually abused," and that she suffered physical pain and emotional distress as a result. *Id.* ¶¶ 38–39. As to Shalom and Maranatha, she alleges that they owed a duty to her to protect her while she was an invitee onto their respective properties. She contends that they both breached these duties by failing to provide security on their premises, when it was foreseeable that a man who was not her father who took her to isolated parts of the property, could "be up to malfeasance." *Id.* ¶ 40. For relief, she seeks compensatory damages and punitive damages.

Children's Choice moves to dismiss Ms. Nolt's § 1983 claim against it on the basis that she has not alleged facts sufficient to plausibly show that it was a state actor. It also contends that the punitive damages claim in both counts is legally insufficient and should be dismissed. *See* ECF No. 22. Maranatha Christian School moves to dismiss the plaintiff's claim for punitive damages as legally insufficient. *See* ECF No. 36.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

5

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)). However, the plaintiff must allege facts necessary to make out each element of each claim he asserts. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 563 n.8). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

*Section 1983 Claim Against Children's Choice*

Ms. Holt asserts a claim against Children's Choice under 42 U.S.C. § 1983 for alleged violations of her substantive due process rights under the Fourteenth Amendment.[3] This Amendment "governs only state action, not the actions of private citizens or organizations." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citing *Rendell–Baker v. Kohn*, 457 U.S. 830, 838 (1982)). To state a claim under § 1983, the plaintiff must allege that the defendant deprived her of a federal constitutional or statutory right while acting under color of state law. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citing *Leshko*, 423 F.3d at 339). Actions taken "under color of law" are equivalent to "state action" under the Fourteenth Amendment. *Id.* "Thus, a

---

[3] The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Const. amend. XIV, § 1.

plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach*, 589 F.3d at 646 (citing *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 169–170 (3d Cir. 2004)).

Children's Choice argues that Ms. Nolt's § 1983 claim must fail because it is a private organization that was not acting under color of state law.[4] It contends that the complaint fails to set forth any facts to support Ms. Nolt's claim that Children's Choice's conduct amounts to acts on behalf of the state or that it has acted with significant aid of the state.

Although private actors are generally not held liable under § 1983 for acts committed under color of law, a private party may be found to have been effectively a state actor if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks omitted)). The Third Circuit has identified three different tests arising under Supreme Court jurisprudence to determine whether that nexus between state and private conduct exists: (1) whether the private actor was delegated a "traditionally and exclusively state function" (the "public function test"); (2) whether the private actor has acted "in concert with state officials" (the "close nexus test"); and (3) whether the State has "so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity" (the "symbiotic relationship test"). *Kach*, 589 F.3d at 646.

Here, Ms. Nolt does not articulate which, if any, of these tests she is invoking. Because there are allegations in the complaint that the City delegated its authority to Children's Choice to

---

[4] Ms. Holt also asserts a claim against Children's Choice for negligence. Children's Choice does not move to dismiss this claim.

7

perform its duties in certifying and supervising foster homes, Ms. Holt may be trying to claim that Children's Choice was effectively a state actor under the "public function" test, which examines whether a private actor was delegated a "traditionally and exclusively state function." It is also possible that she is invoking the "close nexus test" or the "symbiotic relationship test," as the complaint contains several allegations that DHS and Children's Choice worked very closely together.

In *Leshko*, the Third Circuit considered whether foster parents, who were sued by their foster child under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment rights, could be considered state actors under the "public function" test. To answer the question of whether the provision of care to children in foster homes was a "traditionally and exclusively" governmental function in Pennsylvania, the court examined the history of organized placement of children in foster homes in Pennsylvania. Noting that private organizations began regularly removing children from their homes and placing them in institutions or with other families in the late 1800s, the court observed that government entities in Pennsylvania did not start supervising the placement of children in foster care and regulating that care until 1901. *Id.* at 343–44 (citations omitted). The court stated that "over time, Pennsylvania began to administer aspects of the foster care system previously performed privately," and acknowledged that "today, . . . removing children from their homes and placing them with other caregivers arguably are exclusively governmental functions in Pennsylvania. . . ." *Id.* at 343–44. But because hands-on care in the foster system "may be tendered by families, private organizations, or public agencies, *see* 42 Pa. C.S. § 6351," the court found that hands-on foster care "has never been, and is not now, an exclusive government function." *Id.* at 343, 344. Noting that "the traditionally exclusive public function requirement is a "'rigorous standard'" that is "'rarely . . . satisfied,"* id.* at 347 (quoting *Robert S. v. Stetson Sch., Inc.*, 256 F.3d

159, 166 (3d Cir. 2001)), the court concluded that the standard was not satisfied. On that basis, it held that "foster parents in Pennsylvania are not state actors for purposes of liability under § 1983." *Id.* at 347.

Citing *Lesko*'s finding that hands-on foster care "has never been, and is not now, an exclusive government function," Children's Choice argues that it could not have been acting under color of law. It also contends that the complaint fails to set forth any additional facts to support Ms. Nolt's claim that Children's Choice's conduct amounts to acts on behalf of the state or that it has acted with significant aid of the state.

Ms. Nolt counters by arguing that *Leshko*'s application to this case is limited because it held only that foster parents were not state actors under § 1983. Because it did not specifically address whether agencies contracted by the government could be state actors, she contends that the case does not preclude a finding here that the City's delegation of all of its duties to Children's Choice renders it a state actor.

Although the court in *Lesko* conducted a thorough historical analysis of the foster care system in Pennsylvania, the defendants in that case -- the plaintiff's foster parents -- played a different role in their foster child's care than Children's Choice is alleged to have played here. Because their functions in the foster care system are different, the court is reluctant, at this early stage of the litigation, to preclude the plaintiff from proceeding under the "public function" test to support liability under § 1983 against Children's Choice. However, as noted in *Lesko*, "the traditionally exclusive public function requirement is a "'rigorous standard'" that is "'rarely . . . satisfied," *id.* at 347 (quoting *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159, 166 (3d Cir. 2001)).

Aside from failing to articulate the ground upon which she is proceeding to support liability under § 1983 against Children's Choice, the allegations in the complaint are too general and

9

conclusory to find that Children's Choice's conduct amounted to state action under any of the tests set forth above. For example, the complaint fails to allege the degree to which the City delegated its authority to Children's Choice to perform the City's duties; when this authority was delegated; which duties, tasks and responsibilities the City purportedly delegated to Children's Choice; which duties, tasks and responsibilities the City retained; and which duties, tasks and responsibilities the two entities shared. There are simply not enough facts plead to show that there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."

Therefore, the Court will grant Children's Choice motion to dismiss the Ms. Nolt's § 1983 claim against it on the basis that she has not alleged facts sufficient to plausibly show that it was a state actor. However, the court will grant the plaintiff leave to amend her complaint to support her claim that Children's Choice was a state actor.

*Claims for Punitive Damages Against Children's Choice and Maranatha*

Children's Choice and Maranatha move to dismiss Ms. Nolt's claim for punitive damages. In Pennsylvania, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *See Hutchinson v. Luddy*, 870 A.2d 766, 772 (Pa. 2005). "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others" and "must be based on conduct which is malicious, wanton, reckless, willful, or oppressive." *See Feld v. Merriam*, 485 A.2d 742, 747-748 (Pa. 1984) (internal quotation marks omitted).

With respect to her allegations against Children's Choice, Ms. Nolt argues that she has plead a "laundry list of intentional actions and intentional inactions" that caused her harm. The facts plead include not properly investigating who might have access to the child; not visiting, interviewing and observing the plaintiff; not monitoring the child's health; not consulting with her therapist; not discussing stranger danger with the child; failing to assess safety; and ignoring the child's complaints and signs of emotional distress. Compl. 28.

This list of inactions does not contain the requisite intent or willfulness to state a claim for punitive damages. These are only conclusory allegations of intentional and reckless conduct, lacking any specifics showing malicious or outrageous conduct. Therefore, the Court concludes that Ms. Nolt's punitive damages claim against Children's Choice must be dismissed.

With respect to her allegations against Maranatha, Ms. Nolt argues that the facts she plead are sufficient to state a claim for punitive damages. Specifically, she points to her allegations that the school failed to provide any security measures for its public events, despite its knowledge that young children would be present and that predators come to such public events to prey on children. Because the school is a business that had a duty to protect young child students, it was "extremely foreseeable" that, without proper security, a child could suffer severe harm on its premises, including at night, at public events, for which anyone could come in contact with the children. She contends that this was tantamount to a "refusal" to provide even the most minimal security to protect children and the plaintiff. She also claims that because the school knew that Mr. Groff was not the plaintiff's father or legal custodian, and it was extremely unusual and odd that he was accompanying her anywhere without Florence Nolt or anyone else present, particularly to secluded areas behind and in the school.

The Court similarly concludes that Ms. Nolt's punitive damages claim against Maranatha must be dismissed. A failure to set up a security system when no one had notified the school of a security risk is not malicious, wanton, reckless, willful, oppressive or outrageous conduct. Nor can the plaintiff convert the defendant's *failure* to provide security into a "refusal" to provide even the most minimal security. Her allegations of intentional and reckless conduct by Maranatha are conclusory at best.

## CONCLUSION

Because the complaint fails to sufficiently plead that Children's Choice is a state actor for purposes of § 1983, the Court will grant Children's Choice's motion to dismiss the § 1983 claim. However, the motion will be without prejudice, and Ms. Nolt will be permitted to amend the complaint to cure the deficiencies as to that claim. Because the complaint fails to state a claim for punitive damages against Children's Choice or Maranatha, their motions to dismiss the plaintiff's claim for punitive damages will be granted, and the plaintiff's claims for punitive damages against Children's Choice and Maranatha are dismissed.

BY THE COURT:

/s/ Kai N. Scott
**HON. KAI N. SCOTT**
**United States District Court Judge**